1

```
                        UNITED STATES BANKRUPTCY COURT
                         EASTERN DISTRICT OF PENNSYLVANIA


 IN RE:                           .  Chapter 13
                                  .  Case No.: 16-17392 (AMC)
 RENEE CURTIS-CAREY,              .
                                  .
                                  .
                                  .  Courtroom 4
                                  .  900 Market Street
                        Debtor.   .  Philadelphia, PA 19107
                                  .
                                  .  Wednesday, May 25, 2022
 . . . . . . . . . . . . . . . . .  11:11 A.M.


                          TRANSCRIPT OF HEARING
                   BEFORE THE HONORABL ASHLEY M. CHAN
                     UNITED STATES BANKRUPTCY JUDGE


 APPEARANCES:

 For the Debtor:          Alfonso G. Madrid, Esquire
                          COMMUNITY LEGAL SERVICES OF
                             PHILADELPHIA
                          North Philadelphia Law Center
                          1410 West Erie Avenue
                          Philadelphia, Pennsylvania 19140


 For PHH Mortgage:        Kristen D. Little, Esquire
                          LOGS LEGAL GROUP, LLP
                          3600 Horizon Drive
                          Suite 150
                          King of Prussia, Pennsylvania 19406

 Electronically recorded
 By:                      ECRO

 Transcription Service:   Reliable
                          1007 N. Orange Street
                          Wilmington, Delaware 19801
                          Telephone: (302) 654-8080
                          E-Mail: gmatthews@reliable-co.com

 Proceedings recorded by electronic sound recording;
 transcript produced by transcription service.
```

1                               INDEX

2
  MOTIONS:                                                        PAGE
3
  Agenda
4 Item 1:   Debtors' Second Motion For Contempt                      3

5             Court's ruling                                         9

6 Transcriptionist's Certificate                                    13

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   (Proceedings commenced at 11:11 a.m.)

2     THE COURT:  All right.  Number 2, Renee Curtis-
3 Carey, second motion for contempt.

4     Would counsel make their appearance, please.

5     MR. MADRID:  Alfonso Madrid for the debtor, Renee
6 Curtis-Carey.

7     THE COURT:  Okay.

8     MS. LITTLE:  Kristen Little -- good morning, Your
9 Honor --

10     THE COURT:  Go ahead.

11     MS. LITTLE:  --  Kristen Little for respondent,
12 PHH Mortgage.

13     THE COURT:  Thank you.

14     Mr. Madrid, where are we on this?

15     MR. MADRID:  Well, Your Honor, just for -- if
16 you'll appreciate a brief history, Ms. Curtis left this
17 bankruptcy in November with an order from this Court saying
18 she was current on her post-petition mortgage payments.  As a
19 result of inaccurate statements and letters, we filed the
20 first contempt motion, which was resolved by a stipulation
21 and order, in which we negotiated deadlines for PHH to
22 correct their records.  Not only were those deadlines not
23 met, but PHH has continued to send default notices and
24 inaccurate statements showing legal fees and late fees, you
25 know, showing on her account and that she's not current, even

1 though there's no dispute that she has made ever mortgage
2 payment from December to the present.
3     Counsel and I agreed to a continuance, a one-month
4 continuance on April 21st, for which I will disclose, Ocwen
5 paid my client $4,000 to allow it more time.  Since that
6 time, PHH has, it looks like they're doing one thing, but
7 they're still sending statements and notices.
8     I've uploaded as Exhibit E to the docket, notices
9 my client has received since we agreed to this continuance:
10 a 418 notice saying she's in default; a 421 statement that's
11 inaccurate; a May 6th statement saying that she's behind on
12 her payments; and a May 18th -- I'm sorry -- May 6th
13 statement that's inaccurate; and a May 18th notice saying
14 that she is, again, behind on her payments.
15     Now, I did have my client look at her account
16 online this morning and I have just uploaded that as
17 Exhibit F to the docket and it looks like last night or
18 yesterday, Ocwen did some adjustments, but if Your Honor will
19 look at the very top of the dashboard, it's still showing
20 that she's owing for her May payment and that it's 24 days
21 past due.
22     THE COURT:  Okay.  Ms. Little?
23     MR. MADRID:  So --
24     THE COURT:   (Indiscernible.)
25     MR. MADRID:  I'm sorry.  I just want to point out

1  that this is on a certification of no response and that
2  although Ms. Little is here, I don't hear her client on the
3  line from Ocwen or from PHH here.  I do object to Ms. Little
4  presenting anything that's essentially hearsay.
5              THE COURT:  Okay.  Ms. Little, so, have you been
6  recently retained by the PHH Mortgage?
7              MS. LITTLE:  Your Honor, I've been working with
8  them since the first motion for sanctions.
9              THE COURT:  Okay.  So, why has there been no
10 response to this second motion?
11             MS. LITTLE:  Your Honor, I did not get authority
12 to respond before the debtor certified no response.
13             THE COURT:  Okay.  So, you're --
14             MS. LITTLE:  And I was working directly with
15 Mister -- with Attorney Madrid and to mitigate the debtor's
16 damages, we did pay him the $4,000 additional in fees while I
17 worked with Ocwen to correct this account.
18             THE COURT:  Okay.  You but the $4,000, wasn't
19 that -- was that on the first motion or the second motion?
20             MS. LITTLE:  The $1400 was on the first motion and
21 then there's additional -- we tendered an additional $4,000
22 in late-April.  If Your Honor thinks additional sanctions are
23 appropriate, that is clearly within Your Honor's discretion.
24             THE COURT:  Yes.
25             MS. LITTLE:  The proposed order that's been

1  uploaded asked for a hearing and some of these matters are
2  post-bankruptcy closing issues and my concern is if we go to
3  a hearing, I'm not sure what we're going to accomplish with
4  the admissions and the tender to date of the attorney's fees
5  because I may have to raise jurisdictional issues as to what
6  is within this Bankruptcy Court and without.
7              I don't want to do that, but it's certainly within
8  Your Honor's discretion to enter additional sanctions.
9  Clearly, we knew -- we did not comply.  We did, in advance,
10 tender the additional $4,000.  I'm not saying that makes any
11 of the matters correct or right, just that we have tried to
12 mitigate the debtor's damages while we work through the
13 accounting.  The debtor is due for June.
14             I'm not sure if I addressed Your Honor's
15 questions.
16             THE COURT:  I guess what I'm trying to understand
17 is, I guess my first concern is why a response wasn't filed
18 to the second motion for contempt and you basically told me
19 that your client didn't authorize you to respond to that, so
20 I think that they'll have to take responsibility for failing
21 to do so.  I just want to make sure that that $4,000 payment
22 wasn't some kind of request that you get more time to answer
23 it.
24             I mean, Mr. Madrid, that wasn't -- was that the
25 case or --

1          MR. MADRID:  That's what it was for, Your Honor.
2  It was, the $4,000 was paid to my client for the continuance
3  so that PHH could fix -- could continue working on this
4  account.
5          THE COURT:  But then they still never filed a
6  response for this hearing?
7          MR. MADRID:  No.
8          THE COURT:  Okay.  So, what are you sanctions
9  request, Mr. Madrid?
10         MR. MADRID:  Your Honor, you know, the purpose of
11 contempt is to coerce compliance.  I mean, this has been
12 going on awhile.  We have, you know, you know the history
13 here.  I think that PHH, which is a corporation that services
14 hundreds of thousands of mortgages, needs to be given the
15 cost for this.
16         Now, Exhibit E has four things that have been --
17 that my client has received since we agreed to the
18 continuance, which was to correct their records.  I think a
19 penalty of $5,000 per each one of those is warranted to wake
20 PHH up.
21         The amended proposed order, which I uploaded,
22 provides a blank for Your Honor to put in a figure that you
23 deem appropriate if you disagree with me, obviously.  I've
24 also included in paragraph two that PHH should bear the
25 burden now of going forward.  That PHH must now take -- and

1  this means that this timing is completely in its power -- it
2  shall schedule hearings to present evidence that debtor is
3  now current and that they have rectified her records and that
4  anything issued to her will be current, and that until PHH
5  schedules that hearing, a daily penalty of $200 is
6  appropriate.
7              THE COURT:  Ms. Little?
8              MR. MADRID:  Go ahead, Your Honor.
9              THE COURT:  I just want her to respond.
10             MS. LITTLE:  Your Honor --
11             MR. MADRID:  And there's more, Your Honor.
12             MS. LITTLE:  I'm sorry, may -- can -- may I speak?
13             THE COURT:  Mr. Madrid, did you have anything
14 more?
15             MR. MADRID:  There were a couple more paragraphs
16 of the order, Your Honor.
17             THE COURT:  Okay.  (Indiscernible.)
18             MR. MADRID:  I am suggesting that because we are
19 here, should debtor get anymore correspondence after this
20 date that indicates she's in default or wrongly states the
21 status of her loan, that there should be a $10,000 penalty
22 for that correspondence or statement.  And, finally, I do ask
23 that the Court grant the attorney's fees that I have
24 incurred, with respect to this motion.
25             THE COURT:  Okay.  Ms. Little?

```
 1              MS. LITTLE:  Your Honor, I would only request that
 2  those, while the Court has the authority to address
 3  sanctions, that seems extreme.  And, again, if we have to
 4  have a hearing, I am going to have to raise jurisdictional
 5  issues as to payments that have been made outside of a closed
 6  bankruptcy.  And I really don't want to do that.  I do, you
 7  know, I'd like to bring this chapter to a close for the
 8  debtor.
 9              Your Honor clearly has the authority to enter the
10  sanctions if it feels appropriate at this time.  A $200-a-
11  day, $10,000 -- $40,000, it seems excessive to me.  And we
12  have not been silent; we have been working and keeping the
13  debtor updated.
14              THE COURT:  Yeah, but the --
15              MR. MADRID:  Your Honor (indiscernible).
16              THE COURT:  So, I think this is that I'd like to
17  do.
18              Mr. Madrid, I want you to --
19              MR. MADRID:  Yes.
20              THE COURT:  -- amend the order to add the $5,000
21  that you're requesting today, strike the paragraph about
22  prospective, you know, $10,000 sanctions, but everything else
23  stays in and I'm going to sign that.
24              MR. MADRID:  Including the $200 daily and putting
25  on PHH to schedule the hearing?
```

1              THE COURT:  Yes.
2              MR. MADRID:  All right.  And, Your Honor, I
3    haven't specified an amount for my attorney's fees.
4              THE COURT:  Yes.
5              MR. MADRID:  I will tell you that as of yesterday,
6    I had 11.2 hours on this motion.  My hourly rate at CLS is
7    $665.  So, that comes out to $7,448.
8              THE COURT:  Okay.  Well, include that and your
9    time today in the proposed order that you file later today,
10   okay.
11             MR. MADRID:  Thank you, Your Honor.
12             THE COURT:  And Ms. Little, I guess I would
13   suggest that you call up your client immediately and tell
14   them that the Court is displeased with the lack of response,
15   that they don't seem to be doing what I need them to be doing
16   and want them to correct it now before sanctions get any
17   higher.
18             Do you understand?  I'm not mad at you, I'm just
19   saying that I'm very frustrated with your client.
20             MS. LITTLE:  I understand, Your Honor.  I'm just
21   letting the Court know that I'm not going to be representing
22   my client in a month -- I'm leaving the firm -- so I'll do my
23   best to transition this to --
24             THE COURT:  Okay.
25             MS. LITTLE:  -- to counsel that can finish this up

1  for them.
2           THE COURT:  And then I suggest that you put in
3  writing to them when you tell them my thoughts from today
4  that I'm not going to look favorably upon any other arguments
5  that they may make stating that because you transitioned out
6  and someone else is in, that they're going to get any more
7  time.  I want them to comply today, now.  I don't care that
8  you're leaving in a month.  I mean, that's going to be their
9  problem.  They need to get up to speed and make sure that
10 this happens.  In an ideal world, they'd make it happen
11 before you leave, right.
12          MS. LITTLE:  I don't understand, Your Honor.
13          THE COURT:  Yes.
14          MS. LITTLE:  I'm just letting debtor's counsel and
15 you know.
16          THE COURT:  Okay.  I appreciate that.
17          MR. MADRID:  Your Honor, could you clarify one
18 thing?  I just want to make sure I understand.
19          In terms of the sanctions paid to my client, I did
20 suggest $5,000 per occurrence, which would come out to
21 $20,000.  I'm not sure if you're saying $5,000 total or if
22 you agree with me.
23          THE COURT:  Oh, I thought you said that you were
24 requesting a total amount of $5,000.
25          MR. MADRID:  No, I was saying that due to the

1  history, that would be more appropriate; it's something that
2  would wake up PHH.  I was saying $5,000 per each of those
3  things that's attached as Exhibit E.  That's a total of
4  $20,000.
5          THE COURT:  Right.  But how much -- so, how much
6  are they going to pay you for the attorney's fees time,
7  including today, approximately?
8          MR. MADRID:  It'll probably be about $8,000.
9          THE COURT:  Okay.  Why don't you make it $2,000
10 per occurrence, okay.
11         MR. MADRID:  Okay.  So, $8,000, total.
12         THE COURT:  Yes, correct.
13         MR. MADRID:  Thank you, Your Honor.
14         THE COURT:  All right.  Thank you, both.
15         MS. LITTLE:  Thank you.
16         THE COURT:  Thank you, Ms. Little.
17         MS. LITTLE:  Thank you.
18     (Proceedings concluded at 11:22 a.m.)
19
20
21
22
23
24
25

```
 1                      CERTIFICATION
 2          I certify that the foregoing is a correct
 3   transcript from the electronic sound recording of the
 4   proceedings in the above-entitled matter to the best of my
 5   knowledge and ability.
 6
 7
 8
 9   /s/ William J. Garling                    May 28, 2022
10   William J. Garling, CET**D-543
11   Certified Court Transcriptionist
12   For Reliable
13
14
15
16
17
18
19
20
21
22
23
24
25
```